IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| HOLLY CHUGHTAI, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. PX-15-2963 |
| | * | |
| | * | |
| KAISER PERMANENTE, | * | |
| | * | |
| Defendant. | | |
| | ****** | |

**MEMORANDUM OPINION**

Pending before the Court in this employment discrimination action is the Motion for Summary Judgment filed by Defendant Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc. ("Kaiser"). (ECF No. 42.) The matter has been fully briefed and no hearing is necessary. *See* D. Md. Loc. R. 105.6. Upon consideration of the parties' arguments and the evidence in the record, the Court GRANTS Kaiser's motion.

**I.    BACKGROUND**

The following facts are taken from the record and construed in the light most favorable to Plaintiff Holly Chughtai. Chughtai was first hired as a nurse by Kaiser in 2008. ECF No. 42-14 at 3 (Chughtai Dep. 24:15–17). In 2009, Chughtai applied and was selected for a position as a radiology nurse in Kaiser's Shady Grove Medical Center. ECF No. 42-14 at 7–8 (Chughtai Dep. 34:4–12; 37:16–18). In 2011, Kaiser informed Chughtai that she was being transferred to Kasier's Largo Medical Center ("Largo"). *See* ECF No. 42-14 at 10 (Chughtai Dep. 39:1–3). Chughtai, who suffers from thrombophilia, a blood-clotting disorder, opposed the transfer because the long commute would put her at risk for blood clots. *See* ECF No. 42-14 at 11, 13–14

1

(Chughtai Dep. 40:5–7, 45:14–16, 46:3–12). Chughtai spoke with Artine Hollis, her would-be supervisor at the Largo Center, as well as Derek Perkins, Hollis' supervisor at the time, and was informed that they would not be able to prevent her transfer. *See* ECF No. 42-14 at 11–12, 20 (Chughtai Dep. 40:5–41:6, 60:13–21). Chughtai then requested an accommodation through Kaiser's Integrated Disability Management program ("IDM") in Kaiser's Human Resources department ("HR"). *See* ECF No. 42-14 at 12 (Chughtai Dep. 41:9–22); ECF No. 42-4 at 3–4.

Although Chughtai's physician recommended that she not have any "prolonged periods of immobility including transcontinental airline travel or prolonged automobile commutes," ECF No. 42-4 at 53, Chughtai's physician never explained what constituted a "prolonged" period. Accordingly, Kaiser was unable to grant her an accommodation. ECF No. 42-4 at 4–6. Chughtai's physician noted that her only work limitation was "prolonged immobility" or "prolonged sitting," and that her normal work responsibilities were not affected by her thrombophilia. ECF No. 42-4 at 53, 59–60; *see* ECF No. 42-14 at 20 (Chughtai Dep. 60:1–5). So long as Chughtai was able to stand and walk once every hour, her condition would be adequately addressed. ECF No. 42-14 at 13–14, 20 (Chughtai Dep. 45:18–46:2, 60:1–5).

Shortly after Chughtai's request not to be transferred was denied, Chughtai took FMLA leave. Prior to returning from leave, Chugtai again was transferred, this time to Kaiser's Gaithersburg Center ("Gaithersburg"). Chughtai never worked or set foot in Largo. ECF No. 42-14 at 10–11, 15 (Chughtai Dep. 39:21–40:3, 47:3).

Chughtai was the only radiology nurse in Kaiser's Gaithersburg location. When Chughtai began working at Gaithersburg, her supervisor was Tyrone Hughley, who reported to Perkins. ECF No. 42-14 at 21 (Chughtai Dep. 65:11–17). Hughley and Perkins were subsequently terminated. From the record, it appears that their firing was precipitated in part by

complaints that Chuhgtai had lodged against them. *See, e.g.*, ECF No. 46-1 at 72 (Chughtai Dep. 273:10–14). In May 2013, Hollis and Angie Edwards replaced Hughley and Perkins as Chughtai's co-supervisors. ECF No. 42-6 at 2; ECF No. 42-8 at 13. Mohammad Malik, Regional Director of Imaging Services, also was a senior member of Chughtai's chain of command. *See* ECF No. 44-42 at 13 (Malik Dep. 12:7–16).

When Chughtai began working in Gaithersburg, she complained to her supervisors that her workstation was not ergonomically designed. ECF No. 42-14 at 22–24 (Chughtai Dep. 72:1–74:22); ECF No. 42-14 at 73–74; ECF No. 44-42 at 24 (Malik Dep. 24:9–17). Chughtai was directed to fill out Kaiser's ergonomic assessment form and to discuss her needs with the Employee Health Nurse. Chughtai requested a new chair and a full-sized writing surface. ECF No. 42-14 at 25–27 (Chughtai Dep. 77:16–79:17); *see* ECF No. 42-14 at 73–74. Due to the size of her work station, Kaiser was unable to provide Chughtai with a full-sized table, but Kaiser did provide Chughtai with an adjustable work surface and an ergonomic chair used throughout Kaiser's facilities. ECF No. 42-11 at 2.

Shortly after Chughtai began working at the Gaithersburg Center, concerns began to surface about her workflow, including the scope of her responsibilities and the circumstances under which she was expected to assist radiology technologists ("radiology techs") with preparing patients for procedures and starting IVs. *See* ECF No. 42-14 at 29–30, 31–32, 35, 36, 37 (Chughtai Dep. 92:9–93:13; 96:3–97:20; 102:7–11; 106:4–19; 109:1–19); *see also* ECF No. 42-14 at 75; ECF No. 44-42 at 18 (Malik Dep. 17:4–13). Conflicts surrounding Chughtai's work continued through her time at Gaithersburg. Radiology techs complained about Chughtai's performance; Chughtai disagreed, contending that her job duties were narrow, and did not involve screening patients and starting IVs. *See, e.g.*, ECF No. 42-14 at 36 (Chughtai Dep.

106:8–12); ECF No. 42-14 at 84–85. Chughtai's narrow interpretation of her job was not shared by her coworkers or supervisors.[1] *See, e.g.*, ECF No. 42-8 at 2–5, 8, 10; ECF No. 42-14 at 77.

As a result, Chughtai's supervisors, Hollis, Edwards, and Alicia McCullough (a regional manager with oversight over Chughtai's department), discussed with Chughtai her duties and their expectations within the radiology department. *See* ECF No. 42-8 at 3; ECF No. 42-14 at 38–39 (Chughtai Dep. 261:4–262:21); ECF No. 42-10 at 1; No. 44-41 at 22–28, 33–34 (Hollis Dep. 21:2–27:14, 32:12–33:1). Chughtai complained to Malik and to Kaiser's Chief Operating Officer, Linda Collins, that these conversations were harassing and retaliatory. *See, e.g.*, ECF No. 42-14 at 40–41, 50–51, 81, 82 (Chughtai Dep. 268:18–269:10; 309:19–310:20). Chughtai also reported to Malik that Edwards, Hollis, and McCullough harassed her by assigning her duties not in her job description. ECF No. 42-14 at 40–41 (Chughtai Dep. 268:11–269:20); ECF No. 42-9 at 2–3; *see also* ECF No. 46-1 at 38–40 (Chughtai Dep. 239:2–241:8). Chughtai reported that she believed these actions were leveled against her because she had complained about Perkins. *See* ECF No. 42-14 at 81; *see also* ECF No. 46-1 at 71–72 (Chughtai Dep. 272:21–273:9). Chughtai further viewed her Largo transfer as "harassment." ECF No. 42-14 at 41, 52 (Chughtai Dep. 269:12–22; 311:3–6).

Collins asked Malik to investigate Chughtai's allegations. Malik engaged Jamie Green, a regional nurse, to audit the scope of Chughtai's role to determine whether her assignments were appropriate for a radiology nurse. Green confirmed they were. ECF No. 44-42 at 26 (Malik Dep. 25:5–18); ECF No. 42-9 at 3; ECF No. 42-7 at 2, 3–4. Additionally, Green observed that Chughtai failed to follow proper protocol in transferring a patient from the radiology department to Kaiser's Clinical Decision Unit, the equivalent of an emergency room. This incident

---

[1] This broader understanding is consistent with the job description for Chughtai's position, which provides that the radiology nurse will conduct "pre-procedural assessment and preparation," and that the radiology nurse will "administer[ ] . . . I.V. contrast agents." ECF No. 42-14 at 69.

functionally left the patient unattended, which Green viewed as a lapse in Chughtai's clinical judgment. ECF No. 42-7 at 2–3; *see also* ECF No. 44-43 at 41–42, 69 (Edwards Dep. 40:12–41:18, 68:4–8).

On July 23, 2013, Hollis and Edwards met again with Chughtai to discuss concerns about her work. At the meeting, Hollis and Edwards informed Chughtai that she could be subjected to a corrective action. *See* ECF No. 42-8 at 5, 13. This meeting culminated in a confrontation, the exact details of which are contested. For the purposes of this motion, the Court assumes, as Chugtai describes, that the conversation took on an aggressive tone. Chughtai attempted to disengage from the meeting and left the room. Hollis and Edwards followed Chughtai back to her work station and confronted her in a physically aggressive manner, repeatedly telling her to leave the building. *See* ECF No. 42-14 at 42, 43–48 (Chughtai Dep. 286:3–21, 288:2–293:22).

Following this altercation, Chughtai began experiencing anxiety and other health-related complications. Chughtai requested FMLA leave, which was denied because she had not worked the requisite number of hours in the previous year to be eligible for such leave. ECF No. 42-14 at 87–89. Chughtai nevertheless was approved for six months of leave in accordance with her collective bargaining agreement. *See* ECF No. 42-14 at 94. During Chughtai's leave, Timothy Cradduck became her supervisor. ECF No. 42-5 at 2. When Chughtai's leave expired, Cradduck informed her in writing of her expected return date. ECF No. 42-5 at 3, 11. Chughtai was unable to return to work because she was suffering from migraine headaches, anxiety, and depression, and was continuing to undergo medical evaluations. ECF No. 42-14 at 62–64, 66–67 (Chughtai Dep. 351:10–353:2; 358:13–359:12). Chughtai requested an extension of her leave from an unidentified Kaiser staff member. ECF No. 42-14 at 60–61 (Chughtai Dep. 348:16–349:22); *see* ECF No. 42-14 at 97–98; ECF No. 42-4 at 6. No additional leave was granted, and

5

when Chughtai did not report back to work, her employment was terminated. *See* ECF No. 42-14 at 99.

On March 24, 2014, Chughtai filed a complaint with the Montgomery County Office of Human Rights. ECF No. 42-14 at 100–01. Thereafter, Chughtai filed suit in this Court, alleging race discrimination in violation of Title VII and Montgomery County Human Rights Law (Counts I & II), disability discrimination in violation of the ADA and Montgomery County Human Rights Law (Counts III & IV), and associated race and disability retaliation claims (Counts V–VIII). *See* ECF No. 16 (Amended Complaint). Kaiser moves for summary judgment in its favor on all counts.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the Court, construing all evidence and drawing all reasonable inferences in the light most favorable to the non-moving party, finds no genuine dispute exists as to any material fact, thereby entitling the movant to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see In re Family Dollar FLSA Litig.*, 637 F.3d 508, 512 (4th Cir. 2011). Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In responding to a proper motion for summary judgment, the party opposing summary judgment must present evidence of specific facts from which the finder of fact could reasonably find for him or her." *Venugopal v. Shire Labs.*, 334 F. Supp. 2d 835, 840 (D. Md. 2004), *aff'd sub nom. Venugopal v. Shire Labs., Inc.*, 134 F. App'x 627 (4th Cir. 2005) (citing *Anderson v. Liberty Lobby,* 477 U.S. 242, 252 (1986); *Celotex,* 477 U.S. at 322–23). The party opposing summary judgment "cannot create a genuine issue of material fact through mere speculation or

the building of one inference upon another." *Othentec Ltd. v. Phelan*, 526 F.3d 135, 140 (4th Cir. 2008) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)). Where a party's statement of a fact is "blatantly contradicted by the record, so that no reasonable jury could believe it," the Court will credit the record over the averred fact. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III. DISCUSSION

### A. Discrimination Claims

The Court notes that the elements necessary to sustain Chughtai's claims brought under Montgomery County law are the same as the elements for her federal statutory discrimination claims. *See Dyer v. Oracle Corp.*, Case No. PWG-16-521, 2016 WL 7048943, at *2 & n.5 (D. Md. Dec. 5, 2016); *Whittaker v. David's Beautiful People, Inc.*, Civil Action No. DKC 14-2483, 2016 WL 429963, at *2 n.2 (D. Md. Feb. 4, 2016); *Anderson v. Discovery Commc'ns, LLC*, 517 F. App'x 190, 193 n.3 (4th Cir. 2013), *as amended* (May 3, 2013). The Court discusses each of Chughtai's claims in turn.

#### 1. Disability Discrimination: Failure to Accommodate

An employer's failure to make reasonable accommodations for a disabled employee may give rise to a disability-based discrimination claim. To sustain such a claim, the plaintiff must demonstrate that: (1) she is a qualified individual with a disability; (2) the employer had notice of her disability; (3) with a reasonable accommodation she could perform the essential functions of her position; and (4) her employer refused to make that accommodation. *Fierce v. Burwell*, 101 F. Supp. 3d 543, 549 (D. Md. 2015) (citing *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 344 (4th Cir. 2013)). Chughtai appears to argue that Kaiser's failure to provide the requested

7

workstation equipment, and refusal to extend medical leave, sufficiently demonstrate discrimination based on race and disability. The Court disagrees.[2]

It is undisputed that Chughtai asked for a more comfortable chair and other modifications to her work area. Further, construing the facts most favorably to Chughtai, the Court assumes her thrombophilia renders her a qualified individual with a disability. This disability, according to Chughtai's medical records, required her to refrain from sitting for extended periods of time. *See* ECF No. 42-4 at 53, 59–60. No evidence exists, however, that a more comfortable chair, on which a person *sits*, constitutes a reasonable accommodation regarding Chughtai's need to *move* in order to perform the essential functions of her job. *See Fierce*, 101 F. Supp. 3d at 550 ("Not every job-related request by a disabled employee that is denied by her employer [constitutes] failure to provide a reasonable accommodation. . . . [T]he denial of a request by a disabled employee could only subject the employer to liability . . . if the requested accommodation was *necessary* in order for her to perform the essential functions of her job." (internal marks and citation omitted; emphasis in original)); *Davis v. Lockheed Martin Operations Support*, 84 F. Supp. 2d 707, 709–11; 712–13 (D. Md. 2000) (employer's refusal to allow employee to work from home was not failure to accommodate; although working from home may have been beneficial, employer had provided all accommodations employee's doctor said were required). The required accommodation, per Chughtai's treating physician, was that she avoid sitting for prolonged periods. Chughtai's workstation equipment had no bearing on this need. Accordingly, summary judgment on this ground is granted.

---

[2] To the extent that Chughtai intends to raise Kaiser's 2011 transfer of her to Largo as part of a failure to accommodate claim, the claim is barred by the applicable statute of limitations. *See Lane v. Prince George's Cty. Pub. Sch.*, No. 11-cv-2088-RWT, 2013 WL 4541642, at *3 (D. Md. Aug. 26, 2013). Such a claim also fails on the merits. *See Jacobs v. NC Admin. Office of the Courts*, 780 F.3d 562, 581 (4th Cir. 2015) ("an employer will not be liable" for failure to accommodate "if the employee ultimately fails to demonstrate the existence of a reasonable accommodation that would allow her to perform the essential functions of the position"); *Crabill v. Charlotte Mecklenburg Bd. of Educ.*, 423 F. App'x 314, 323 (4th Cir. 2011); *Clark v. Sch. Dist. Five*, 247 F. Supp. 3d 734, 745–46 (D.S.C. 2017); ECF No. 42-4 at 53–70.

With respect to Chughtai's requested extension of her medical leave, the Court cannot construe such request as a *reasonable* accommodation. If her leave request were granted, Chughtai would have been on leave for a total of at least one year, if not more. *See Moore v. Md. Dep't of Pub. Safety & Corr. Servs. Patuxent Inst.*, No. CCB-11-0553, 2013 WL 549864, at *4 (D. Md. Feb. 13, 2013) ("Additional medical leave is a reasonable accommodation only where it is 'finite and will be reasonably likely to enable the employee to return to work.'" (quoting *Kitchen v. Summers Continuous Care Ctr., LLC*, 552 F. Supp. 2d 589, 596 (S.D.W. Va. 2008))); *Myers v. Hose*, 50 F.3d 278, 283 (4th Cir. 1995) (duty of reasonable accommodation does not require an employer to grant a disabled employee an indefinite leave of absence). Additionally, no record evidence supports that such an extension would have provided a reasonable accommodation to address the limitations arising from her thrombophilia. The denial of this request was not unreasonable, and Chughtai's claim on this basis fails. Summary judgment is therefore granted as to Chuhgtai's failure to accommodate claim.

**2. Race and Disability Discrimination: Hostile Work Environment**

Chughtai alleges that she was subject to a hostile work environment based on her race and disability. *See* ECF No. 16 ¶¶ 71, 76, 83, 88. Hostile work environment claims, whether prompted by race or disability discrimination, require a plaintiff to establish that she was subjected to conduct that was (1) unwelcome, (2) based on a protected characteristic, (3) sufficiently severe or pervasive to alter the conditions of employment and to create an abusive work environment, and (4) imputable to the defendant. *See Pryor v. United Air Lines, Inc.*, 791 F.3d 488, 495–96 (4th Cir. 2015); *Pueschel v. Peters*, 577 F.3d 558, 564–65 (4th Cir. 2009); *Brady v. Bd. of Educ. of Prince George's Cty.*, 222 F. Supp. 3d 459, 471–72 (D. Md. 2016), *aff'd*, 707 F. App'x 780 (4th Cir. 2018). Whether a plaintiff has established a hostile

9

work environment depends on the frequency and severity of the discriminatory conduct, whether that conduct is physically threatening or merely an offensive utterance, and whether the discriminatory conduct unreasonably interferes with the plaintiff's work performance. *See Smith v. First Union Nat'l Bank*, 202 F.3d 234, 242–43 (4th Cir. 2000); *Boyer-Liberto v. Fontainbleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015). The complained-of conduct must be sufficiently extreme to "amount to a change in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). A "plaintiff[] must 'clear a high bar' in order to satisfy this test . . . complaints premised on 'rude treatment' or 'callous behavior' are not actionable." *Brady*, 222 F. Supp. 3d at 472 (quoting *EEOC v. Sunbelt Rentals, Inc.,* 521 F.3d 306, 316 (4th Cir. 2008)).

As more fully explained below, Chughtai's hostile work environment claims do not survive challenge because Chughtai fails to marshal sufficient evidence that any of the complained-of conduct was motivated by a protected characteristic. Alternatively, even when construing the facts most favorably to Chuhgtai, the conduct at issue is not sufficiently severe or pervasive to sustain a hostile work environment claim.

### A. Protected Characteristics

In support of her hostile work environment claims, Chughtai points the Court to (1) the 2011 conversation with Hollis regarding Chughtai's transfer to Largo; (2) May 2013 conversations with Hollis, McCullough, and Edwards regarding her work performance; and (3) a July 25, 2013, memorandum detailing that Chughtai may be subject to corrective action for work-related deficiencies. ECF No. 42-14 at 50–53 (Chughtai Dep. 309:7–312:1); *see* ECF No. 42-6 at 13. Chughtai also complains more generally of her coworkers' rudeness and dismissiveness regarding her work-related requests and suggestions. *See* ECF No. 46-1 at 37,

10

38, 39, 41 (Chughtai Dep. 238:10–15; 239:4–22; 240:12–16; 242:2–20). Critically, at no point does the record evidence link any of this conduct to Chughtai's race or disability. Even Chughtai stated that she believed these incidents stemmed from her role in Perkins' firing. *See* ECF No. 42-14 at 81.

Chughtai also seems to suggest that Kaiser's failure to equip her workstation as requested supports her hostile work environment claim. The record evidence belies Chughtai's position. Chughtai did receive workstation equipment, including an ergonomic chair used throughout Kaiser. More to the point, nothing in the record suggests that any perceived deficiencies in providing her workstation equipment was based on Chughtai's race or disability. Simply put, no facts exist on which this Court could plausibly infer that the Defendants' actions were motivated by her protected characteristics.

### B. Severe and Pervasive Conduct

Alternatively, Chughtai has failed to generate sufficient evidence that any rudeness or hostility she had experienced was pervasive and serious enough to support a hostile work environment claim. *See Brady*, 222 F. Supp. 3d at 472–74 (discussing workplace tensions and additional duties not giving rise to a hostile work environment); *Hemphill v. ARAMARK Corp.*, Civil Action No. 1:12-cv-01584-ELH, 2014 WL 1248296, at *14 (D. Md. Mar. 25, 2014), *aff'd*, 582 F. App'x 151 (4th Cir. 2014) (assignment of additional work duties and placement on a performance improvement plan does not give rise to a hostile work environment); *cf. Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (snubbing by supervisors and co-works not actionable as adverse action for retaliation claim). The July 23, 2013, incident perhaps comes closest, during which Hollis and Edwards followed Chughtai, intimidated her, and told her to leave the building. However, no record evidence links this event to Chughtai's race or

disability, either directly or indirectly. Accordingly, this incident, standing alone or in combination with general rudeness and dismissiveness, is not sufficient to withstand Defendants' challenge.

It bears noting that Chughtai marshals some evidence of racial hostility as reflected in a letter anonymously authored by Kaiser employees and directed toward Kaiser staff member Michelle Dickler. *See* ECF No. 42-14 at 86, ECF No. 46-1 at 114 (Chughtai Dep. 315:4–6, 16–17); ECF No. 42-14 at 86. By any reading, this letter is disturbing. It notes that the recipient and her "white trash friends" are outnumbered by black employees. The letter further warns Dickler to "watch her back," and that "payback is hell" for Dickler's role in getting others fired. Chughtai, however, is not named in the letter, and was on leave when it was sent to Dickler. *See* ECF No. 42-14 at 86.[3]

In theory, instances of racial hostility at Kaiser not directly related to Chughtai could constitute "relevant background evidence" for Chughtai's claim where those instances "involved the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers." *Holley v. N.C. Dept. of Admin.*, 846 F. Supp. 2d 416, 433–34 (E.D.N.C. 2012) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 112, 120 (2002)) (internal marks omitted). But a single anonymous correspondence, as disturbing as this one is, does not provide sufficient evidence that *Chughtai* was subject to a racially hostile work environment. *See Hopkins v. Baltimore Gas and Elec. Co.*, 77 F.3d 745, 753–54 (4th Cir. 1996); *Faragher*, 524 U.S. at 788. This is especially the case where Chughtai was not even working when the letter was sent. In short, no reasonable jury could find that Chughtai has proven her hostile work environment claim. Summary judgment in favor of Kaiser is proper.

---

[3] The letter is dated August 13, 2013; Chughtai began her leave on July 31, 2013. *See* ECF No. 42-14 at 86, 94.

12

### 3. Race and Disability Discrimination: Disparate Treatment

Chughtai also seems to put forward a disparate-treatment claim based on Kaiser's giving other employees more comfortable workstations and greater amounts of leave, as well as imposing lesser discipline on other employees for perceived misconduct. *See* ECF No. 44 at 4, ECF No. 46-1 at 45 (Chughtai Dep. 246:14–19); ECF No. 46-2 at 141–44 (Chughtai Dep. 141:15–144:5). Whether based on race or disability, Chughtai must demonstrate that her unfavorable treatment was because of a protected characteristic. *See Coleman v. Md. Ct. App.*, 626 F.3d 187, 190 (4th Cir. 2010).

No evidence exists that Kaiser treated any similarly situated employee more favorably than Chughtai. *See Johnson v. Balt. City Police Dep't*, No. ELH-12-2519, 2014 WL 1281602, at *19 (D. Md. Mar. 27, 2014) (citing *Sawyers v. United Parcel Serv.*, 946 F. Supp. 2d 432, 442 n.10 (D. Md. 2013), *aff'd*, 576 F. App'x 199 (4th Cir. 2014)); *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010) (comparators must be subject to the same standards and engaged in the same conduct). First, the employees to which Chughtai points were not similarly situated. They were not nurses, but rather radiology techs, whose duties and responsibilities were different from hers. Second, the grants of "leave" to other employees to which Chughtai points involved short or occasional absences, not months of extended leave beyond what employees were entitled to by operation of law or by virtue of their collective bargaining agreement. Indeed, even Chughtai testified that she was unaware of any Kaiser employee being granted the kind of extended leave—a year or more—that she had been denied. ECF No. 42-14 at 66 (Chughtai Dep. 358:9–12). Third, no record evidence suggests that Chughtai was disciplined more harshly than others for similar misconduct. Chughtai's belief that other employees *should* have been disciplined cannot give rise to a disparate treatment claim. Finally, even if Chughtai's complaints about

13

workstation equipment could support her claim, no evidence exists that Kaiser gave other employees better equipment or preferential treatment in that respect. Accordingly, no evidence exists that Chughtai was treated differently than similarly situated employees. *See Oguezouno v. Genesis Health Ventures, Inc.*, 415 F. Supp. 2d 577, 584–85 (D. Md. 2005). Summary judgment is granted in favor of Kaiser on this claim.

### 4. Discriminatory Discharge

Chughtai also appears to assert that her discharge gives rise to a separate discrimination claim. Chughtai has failed to marshal direct evidence that her discharge was motivated by discriminatory animus, or that she was terminated for reasons relating to her disability. Accordingly, her claims are subject to the burden-shifting framework announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Wells v. BAE Sys. Norfolk Ship Repair*, 483 F. Supp. 2d 497, 507–08 & n.8 (E.D. Va. 2007); *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 57–58 (4th Cir. 1995); *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 278 (4th Cir. 2000). Under this framework, Chughtai must first establish a *prima facie* case of discrimination by demonstrating that (1) she is a member of a protected group, (2) she was discharged, (3) she was fulfilling Kaiser's legitimate expectations at the time of her discharge, and (4) the circumstances of her discharge raise a reasonable inference of unlawful discrimination (or that the position was filled by a similarly qualified applicant outside the protected class). *See Ennis*, 53 F.3d at 58; *King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003). "[A] plaintiff establishes a *prima facie* case" by providing evidence "which would enable the fact-finder to conclude, in the absence of any further explanation, that it is more likely than not that the adverse employment action was the product of discrimination." *Ennis*, 53 F.3d at 58.

If Chughtai establishes her *prima facie* case, the burden shifts to Kaiser to offer a legitimate, non-discriminatory reason for her discharge. *See Guessous v. Fairview Property Investments, LLC*, 828 F.3d 208, 216–17 (4th Cir. 2016). If Kaiser provides such a reason, the burden then shifts back to Chughtai to raise a genuine issue of material fact as to whether Kasier's proffered reason is a mere pretext for discrimination. *See id.*; *Holley*, 846 F. Supp. 2d at 428–29. Although the framework "involves a shifting back and forth of the evidentiary burden, Plaintiff, at all times, retains the ultimate burden of persuading the trier of fact that the employer discriminated in violation of" the law. *Venugopal*, 334 F. Supp. 2d at 841.

Chughtai's claim must fail because she has put forward no evidence that she was fulfilling Kaiser's legitimate expectations at the time of her discharge. It is undisputed that when she was terminated, Chughtai had exhausted her leave and could not return to work or perform the requirements of her position at all. Because Chughtai could not perform the essential functions of her job, she could not meet Kaiser's legitimate expectations, and her discharge was not discriminatory. *See Tyndall v. Nat'l Educ. Ctrs., Inc. of CA*, 31 F.3d 209, 213 (4th Cir. 1994) (employer's discharge of employee who was not able to meet attendance requirements of job was not discriminatory); *Wells*, 483 F. Supp. 2d at 507 & n.8 (when plaintiff had not worked in her position for over 15 months, plaintiff could not establish *prima facie* case of discrimination); *cf. Holmes v. e.spire Commc'ns*, 135 F. Supp. 2d 657, 665–67 (D. Md. 2001) (when plaintiff's testimony established that she was unable to return to work at conclusion of leave period, discharge of plaintiff at conclusion of leave period did not violate FMLA). Moreover, the record demonstrates that Chughtai's work prior to her taking leave was below Kaiser's standards, and that she had been subject to repeated counseling in an effort to improve her performance. By contrast, no record evidence permits a reasonable factfinder to conclude that Chughtai was

15

terminated on account of race or disability. Thus, Kaiser is entitled to summary judgment on any discriminatory discharge claim.

### B. Retaliation Claims

Whether based on race or disability, Chughtai's retaliation claims require her to demonstrate that (1) she engaged in protected activity; (2) Kaiser took an adverse employment action against her, and (3) a causal link exists between the two actions. *See Boyer-Liberto*, 786 F.3d at 281. An adverse employment action must be "materially adverse"; that is, the allegedly retaliatory act must be sufficiently serious to dissuade a reasonable employee from making or supporting a charge of discrimination. *Burlington Northern*, 548 U.S. at 68. Here, assuming that Chughtai engaged in protected conduct, nothing in the record supports a finding that Kaiser took adverse employment action against her.

Chughtai argues, unpersuasively, that her supervisors' discussions about her work duties, Jaime Green's audit, and the notice of potential corrective action, constitute sufficiently adverse employment actions. None of these events, however, led to actual, adverse, job-related consequences akin to demotion, transfer, reprimand, or termination. *See Payne v. Brennan*, Civil Action No. PX 16-1095, 2018 WL 902162, at *6 (D. Md. Feb. 15, 2018) (letter of warning or other employment actions without any adverse consequences flowing from them are not materially adverse); *cf. Jones v. Dole Food Co., Inc.*, 827 F. Supp. 2d 532, 549–50 (W.D.N.C. 2011) (plaintiff's belief that a written warning could have impacted later job performance evaluations was insufficient to show adverse action when it was not so used). Similarly, supervisors' or coworkers' rudeness or dismissiveness as a matter of law does not constitute an

16

adverse employment action. *See Burlington Northern*, 548 U.S. at 68; *Spencer v. Va. State Univ.*, 224 F. Supp. 3d 449, 459–60 (E.D. Va. 2016).[4]

Discharge, on the other hand, is indisputably an adverse employment action that may give rise to a retaliation claim. However, the record evidence, construed most favorably to Chughtai, supports only that she was discharged because she was unable to work at all, not because she engaged in any protected activity. Summary judgment in Kaiser's favor, therefore, is proper on Chughtai's retaliation claims.

## IV. CONCLUSION

Although the Court does not doubt that Chughtai believes she was discriminated against, her belief, "no matter how heartfelt," cannot substitute for evidence supporting her causes of action. *Bowen v. Darby Dev. Co., Inc.*, No. CIV.A. 2:10-2509-RMG, 2012 WL 2675323, at *10 (D.S.C. Apr. 26, 2012), report and recommendation adopted, No. 2:10-CV-2509-RMG, 2012 WL 2675470 (D.S.C. July 6, 2012). Based on the evidence before this Court, no reasonable factfinder could conclude that Kaiser discriminated against Chughtai on account of her race or disability. Kaiser's Motion for Summary Judgment is GRANTED. A separate Order follows.


6/20/2018                                                                          /S/
Date                                                                      Paula Xinis
                                                                           United States District Judge

---

[4] Chughtai also seems to assert that her termination was in retaliation for her involvement in Perkins' discharge. Even if the Court credits that Chughtai had been fired for her role in Perkins' termination, the claim on this basis nonetheless fails because participating in Perkins' termination is not an activity protected by the ADA, Title VII, or analogous state law. *See* ECF No. 46-1 at 272–73, 344–45 (Chughtai Dep. 272:17–273:9, 344:17–345:13); ECF No. 42-14 at 57, 59.